UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

JTH TAX LLC d/b/a LIBERTY TAX
SERVICE f/k/a JTH TAX, INC.,

    Plaintiff,

v.

T2L, LLC; AND TERESA WAYNETSKA,

    Defendants.

CIVIL ACTION NO. 1:22-cv-151

## DECLARATION OF GEOFF KNAPP

I, Geoff Knapp, being duly sworn, depose, and state as follows:

1. I am employed by JHT Tax LLC d/b/a Liberty Tax Service ("Liberty") as Regional Director.

2. As Regional Director, my responsibilities include, but are not limited to, leading assigned district management staff to improve client service, customer retention, and customer satisfaction for offices within assigned geographic areas.

3. I submit this Declaration in support of Liberty's Motion for Preliminary Injunction (the "Motion") in the above-captioned action. The statements contained in this declaration are based on my personal knowledge and/or review of Liberty's corporate records and publicly available information.

**Liberty Franchise System:**

4. Liberty is the franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including the State of Idaho.

5. Liberty owns federally-registered Liberty Tax Service® trademarks, service marks,

logos and derivations thereof (the "Marks"), and has spent substantial time and money advertising and promoting the distinctive and well-known Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the Marks. Franchisees license the Marks pursuant to franchise agreements.

6. Pursuant to the terms of the franchise agreements, Liberty discloses to franchisees certain confidential information ("Confidential Information") and trade secrets, including Liberty's confidential Operations Manual, methods of operation of franchise, customer information and records, and marketing information.

7. Liberty maintains all of its Confidential Information and trade secrets confidentially, and only discloses them to parties bound by confidentiality. In return, Liberty requires that its franchisees agree that, upon expiration, termination, or nonrenewal of a franchise agreement, they will never use, disclose, or permit the use or disclosure of its Confidential Information. Additionally, franchisees agree that upon termination, expiration, or nonrenewal of a franchise agreement, they will stop using all literature and forms received, return all Confidential Information and trade secrets to Liberty.

8. Liberty is one of the largest tax preparation franchises in the United States.

9. Liberty maintains a nation-wide network of locations and tax preparers, with a network of over 21,000 tax preparers.

10. Liberty's busiest time of year are the months of January through April, during which time Liberty generate approximately 90% of its annual revenue.

**Obligations under the Franchise Agreement:**

11. On or about June 24, 2013, T2L entered into a franchise agreement (the "Franchise Agreement") with Liberty for the territory known as ID024, located in and around Payette, Idaho

(the "Territory"). A true and correct copy of the Franchise Agreement is attached to the Verified Complaint as <u>Exhibit A</u>.

12. Waynetska is a managing member of T2L (together, "Defendants"). Waynetska also has been the registered agent of T2L since at least September 2013. True and correct copies of the company's (1) Articles of Organization, (2) 2013 Change of Registered Agent Form, and (3) latest Annual Report are attached to the Verified Complaint as <u>Exhibits B, C and D</u>, respectively. In her capacity as managing member of T2L, Waynetska operated T2L, had complete access to Liberty's Confidential Information, and obtained the advantage of Liberty's nationally-recognized franchise system and goodwill.

13. On or about December 4, 2018, Defendants entered into a mutual termination agreement with Liberty (the "Mutual Termination Agreement"). As discussed in more detail below, pursuant to the Mutual Termination Agreement, Defendants agreed to adhere to all post-termination covenants and obligations in the Franchise Agreement. A true and correct copy of the Mutual Termination Agreement is attached to the Verified Complaint as <u>Exhibit E.</u>

14. During the period between the execution of the Franchise Agreement and the execution of the Mutual Termination Agreement, Defendants operated a Liberty tax preparation business (the "Franchised Business") from 1320 N. Whitely Drive, Fruitland, Idaho (the "Franchise Location").

15. In exchange for Liberty's grant of a franchise allowing Defendants to "operate a tax return preparation business using Liberty's system and Liberty's Marks within the Territory," and specifically at the Franchised Location, Defendants contractually agreed to certain post-termination obligations. *See* <u>Ex. A</u> §§ 1, 9, 10, 12; <u>Ex. E</u> ¶¶ 5-6.

16. Pursuant to the Franchise Agreement, Liberty provided Defendants with training in

3

franchise operation, marketing, advertising, sales, and business systems. *See* Ex. A § 5. Defendants also received a copy of Liberty's confidential operating, marketing, and advertising materials, which are not available to the public or to anyone who is not part of Liberty's business system. *See id.* Pursuant to the Franchise Agreement and the Mutual Termination Agreement, Defendants agreed to keep these materials confidential in perpetuity following the termination or expiration of the Franchise Agreement. *See* Ex. A § 12; Ex. E ¶ 6.

17. Under the Franchise Agreement, Defendants agreed to pay Liberty certain royalties and fees. Ex. A § 4(d).

18. Pursuant to Section 6(g) of the Franchise Agreement, Defendants were contractually obligated to "use the software that Liberty provides" and "may not use, install or allow to be installed any other federal or state personal income tax return preparation or electronic filing software on any computer used in the Franchised Business, without Liberty's prior written consent." Ex. A § 4(d).

19. As set forth in Section 9 of the Franchise Agreement, and the Mutual Termination Agreement, Defendants are obligated to immediately return to Liberty all copies of Liberty's confidential Operations Manual, customer lists, and customer files and records upon termination. *See* Ex. A § 9; Ex. E ¶ 6.

20. Section 10(a) of the Franchise Agreement, contains an in-term covenant "not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except in your capacity as a Liberty Tax Service franchisee using the Liberty Tax Service system to offer such products and services." Ex. A § 10(a).

21. Pursuant to Section 10(b) of the Franchise Agreement, and the Mutual Termination

4

Agreement, Defendants agreed to a post-termination covenant not to compete "[f]or a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business...you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns...within the Territory or within twenty-five miles of the boundaries of the Territory." Ex. A § 10(b); Ex. E ¶ 5.

22. Pursuant to Section 10(d) of the Franchise Agreement, and the Mutual Termination Agreement, Defendants agreed to a non-solicitation covenant, which states that "for a period of two (2) years following the...termination...of the Franchise Business...you will not within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly, solicit the patronage of any person or entity served by any of your Liberty offices in the last twelve (12) months that you were a Liberty franchisee...for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products." Ex. A § 10(d); Ex. E ¶ 5.

23. The non-competition and non-solicitation covenants contained in the Franchise Agreement and the Mutual Termination Agreement are necessary to protect Liberty's legitimate, protectable interest in its respective franchise businesses, including but not limited to:

 A. Maintaining and protecting Liberty's goodwill and customer loyalty;

 B. Retaining customer relationships;

 C. Liberty's customer lists, customer identification, tax returns, and other confidential information; and

 D. Preserving Liberty's ability to facilitate the operation of Liberty franchises where the Franchise Location is currently located.

24. Violations of the non-competition and non-solicitation covenants contained in the Franchise Agreement and the Mutual Termination Agreement cause Liberty immediate and

irreparable harm through, *inter alia*, loss of customer goodwill and loyalty, business opportunities and relationships, customers, profits, franchisee stability, ability to sell other franchises, confidential business information and competitive advantage in is franchised territories. In Section 10(c) of the Franchise Agreement, Defendants expressly agreed that breach of the non-competition covenant causes irreparable harm to Liberty. Ex. A § 10(c).

25. Section 10(h) of the Franchise Agreement provides "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest." Defendants also agreed to "waive all defenses to the strict enforcement of Section 10," and that "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10." Ex. A § 10(h).

26. Pursuant to Section 10(i) of the Franchise Agreement, and the Mutual Termination Agreement, Defendants agreed that "[t]he covenants contained in Section 10 shall survive any termination or expiration of this Agreement." Ex. A § 10(a); Ex. E ¶ 5.

27. Pursuant to Section 12 of the Franchise Agreement, Defendants acknowledged that information provided by Liberty to them regarding, among other things, Liberty's Marks, methods, techniques, formats, specifications, procedures, information, systems, and customer marketing information was confidential, and was to be used only in connection with the operation of the Franchised Business. *See* Ex. A § 12. They further agreed not to use Liberty's Confidential Information for any purpose other than the operation of the Franchised Business, and for any purpose whatsoever upon termination of the Franchise Agreement. *See id.*

28. Pursuant to Sections 12(a) and (c) of the Franchise Agreement, and the Mutual Termination Agreement, Defendants agreed to refrain from interfering with or attempting to interfere with any of the business relationships or advantages of Liberty, and from using for their

6

benefit any Confidential Information from Liberty's proprietary manuals and business system, following transfer, termination, expiration or nonrenewal of the Franchise Agreement. Ex. A § 12; Ex. E ¶ 5.

29. Pursuant to Section 17 of the Franchise Agreement, and the Mutual Termination Agreement, Defendants agreed that "Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto." Ex. A § 17(a); Ex. E ¶ 13.

**Mutual Termination of the Franchise Agreement:**

30. On or about December 4, 2018, Defendants entered into the Mutual Termination Agreement. Waynetska, as managing member of T2L, signed the Mutual Termination Agreement on behalf of T2L.

31. Pursuant to the Mutual Termination Agreement, Defendants (collectively defined in the Mutual Termination Agreement as "Franchisee") each agreed to adhere to all post-termination covenants in the Franchise Agreement, as follows: "Franchisee acknowledges that all post-term covenants of the Franchise Agreement will be adhered to upon execution of this Agreement and thereafter. Nothing contained in this Agreement shall be construed as limiting the continuing effectiveness of the post-term covenants of the Franchise Agreement." Ex. E ¶ 5.

32. Pursuant to the Mutual Termination Agreement, Defendants also agreed to immediately comply with all post-termination obligations contained in the Franchise Agreement, including, but not limited to: (1) abiding by the covenants not to compete and not to solicit as described in the Franchise Agreement; (2) delivering to Liberty all copies, including electronic copies, of lists and other sources of information containing the names of customers who patronized the Franchised Business; (3) delivering to Liberty all customer tax returns, files, records and all copies thereof; (4) delivering to Liberty all copies of the Liberty Operations Manual; and (5)

stopping use of Liberty's Confidential Information. Ex. E ¶ 6.

**Defendants' Breach of the Franchise Agreement and Mutual Termination Agreement, Trade Secret Misappropriation, and Unfair Competition:**

33. An Electronic Filing Identification Number ("EFIN") is required by the IRS to file tax returns electronically and to become an authorized IRS e-file provider, otherwise known as an Electronic Return Originator ("ERO"). Each ERO has a unique EFIN.

34. The IRS periodically publishes all ERO filing data for a particular tax year ("IRS ERO Database"). The IRS ERO Database includes, *inter alia*, the legal name, trade name, address, application submission date, EFIN and corresponding tax office return count for all active EROs.

35. The IRS ERO Database shows that Waynetska is an ERO with a registered business address of 34 S. Main Street, Payette, Idaho 83661 (the "Competing Location"), which is approximately four miles from Defendants' Franchise Location (1320 N. Whitely Drive, Fruitland, Idaho). A true and correct copy of Waynetska's ERO registration information from the IRS website is attached to the Verified Complaint as Exhibit F.

36. The IRS ERO Database also shows that in 2019, 2020 and 2021 (following the termination of the Franchise Agreement and during the term of the post-termination non-competition covenant) Waynetska continued to file tax returns from the Competing Location in violation of the post-termination non-competition and non-solicitation covenants in the Franchise Agreement and the Mutual Termination Agreement.

37. Between 2019 and 2021, over 500 tax returns were filed from the Competing Location.

38. Upon information and belief, in violation of the Franchise Agreement and the Mutual Termination Agreement, Defendants used and otherwise misappropriated Liberty's Confidential Information and trade secrets to file these tax returns from the Competing Location,

8

including, without limitation, Liberty's Operations Manual, customer lists and customer records.

39. Upon information and belief, in violation of the Franchise Agreement and the Mutual Termination Agreement, Defendants also failed to comply with their post-termination obligations to immediately return all copies of Liberty's Operations Manual, customer lists, and customer files and records, and to cease using Liberty's Confidential Information.

40. Upon information and belief, Defendants are currently offering electronic filing of tax returns at the Competing Location using Liberty's Confidential Information and trade secrets to unlawfully compete with Liberty, in violation of the non-competition and non-solicitation covenants in the Franchise Agreement and the Mutual Termination Agreement.

41. Liberty did not become aware of any of Defendants' violations of the Franchise Agreement and the Mutual Termination Agreement described above, including without limitation violations of the post-termination non-competition and non-solicitation covenants, until a recent internal audit of the IRS ERO Database.

42. In light of their conduct to date, upon information and belief, Defendants will continue to offer electronic filing of tax returns at the Competing Location, and use Liberty's Confidential Information and trade secrets in violation of the non-competition and non-solicitation covenants in the Franchise Agreement and the Mutual Termination Agreement.

43. Because Defendants are, and have been, competing with Liberty in violation of the Franchise Agreement and the Mutual Termination Agreement, Defendants have diverted tax preparation fees or royalties that should have been paid to Liberty or that another franchisee would pay to Liberty.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct based upon my personal knowledge, and/or review of Liberty's corporate records and publicly available information.

Date: _____

*Geoff Knapp*
BABABAC50B57469...

Geoff Knapp
Regional Director for JTH Tax LLC d/b/a
Liberty Tax Service
